UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JTWAIN KING,<br><br>Plaintiff,<br><br>v.<br><br>AT&T CORP., et al.,<br><br>Defendants. | CASE NO. 2:25-cv-02270-LK<br><br>ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND ORDER TO SHOW CAUSE |

This motion comes before the Court on Defendant Equifax Information Services LLC's Motion for Judgment on the Pleadings, Dkt. No. 43, which Defendant Experian joined, Dkt. No. 45. For the reasons stated below, the Court grants the motion and orders King to show cause why the Court should not dismiss her other claims or impose sanctions for repeated violations of applicable rules.

## I. BACKGROUND

Jtwain King, proceeding pro se and in forma pauperis, has sued various defendants for alleged violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices

Act, the Communications Act, and the Washington Consumer Protection Act. Dkt. No. 4.[1] She alleges that instead of setting up a "separate account" for one of King's family members as "clear[ly] instruct[ed]," "an AT&T store representative added [that family member] to [her] account," and when she discovered the error, AT&T "promised to investigate and issue credits," but "failed to resolve the issue." Dkt. No. 4 at 19. "On April 22, 2024, AT&T canceled the unauthorized line and accelerated the remaining balance, billing Plaintiff for the full amount"; the "unauthorized device" carried a balance of "approximately $1,141.30." *Id.* at 19. In June 2024, King was prevented from moving her number to another carrier due to AT&T's suspension of her account for non-payment; the issue was resolved in July 2024 "after FCC intervention." *Id.* at 19–20, 35. She avers that "AT&T's Office of the President ultimately acknowledged the error and offered to issue credits totaling $1,141.30 from charges placed on July 1, 2024, but only after the account had been sent to collections and Plaintiff's credit damaged." *Id.* at 20 (citing "Exhibit: WA AG Response, October 9, 2025").[2]

King further alleges that "[t]he fraudulent AT&T account was placed with Credence Resource Management for collection," and although she "disputed this debt with Credence," it "failed to provide proper validation under the FDCPA [and] continued collection activities." *Id.* at 20. King also claims that Goldman Sachs Bank USA "inaccurately reported" her Apple Card account to credit bureaus "as 'charged off' with a balance of $2,932, despite previous [unspecified] corrections," and the "re-insertion of previously deleted information" "caused [her] credit score to

[1] King filed several complaints contemporaneously, which is not permitted under the Federal Rules of Civil Procedure. Dkt. No. 4 at 1–13 (first complaint); *id.* at 15–16 (second complaint); *id.* at 17–42 (third complaint). The Court disregards the first two complaints and considers the third complaint, which is the most comprehensive, to be the operative complaint in this matter. Dkt. No. 4 at 17–42. Even if the Court considered all three complaints, it would still grant the motion for judgment on the pleadings.

[2] No Washington Attorney General response is attached; instead, King attaches an October 9, 2025 letter from AT&T relaying that it had "received a notice from the State of Washington Office of the Attorney General on behalf of Jtwain King regarding AT&T WIRELESS[SM] billing and porting concerns." *Id.* at 25.

drop 26 points[.]" *Id.* at 20.[3] King alleges that she "filed formal disputes" with the defendant Credit Reporting Agencies ("CRAs") Equifax, Experian, and TransUnion "regarding the inaccurate AT&T collection account and other errors," but "[d]espite providing documentation proving the inaccuracies, [the CRAs] failed to conduct reasonable investigations and continued to publish the false information[.]" *Id.*

King attached numerous exhibits to her complaint, including documentation that a balance of $2,531 due to AT&T was sent to collections on July 18, 2025, *id.* at 41, and a letter from AT&T dated October 9, 2025, stating that

> AT&T investigated and determined that due to an error, a new line was added to Ms. King's AT&T WIRELESS[SM] account with a device purchased under an AT&T installment agreement on 02/22/2024. On 07/01/2024, AT&T applied credits totaling $1,141.30 for the charges on the line in question, which were reflected on the AT&T statement in one to two billing cycles. AT&T confirmed that the remaining balance was valid.

*Id.* at 25.

Equifax moved for judgment on the pleadings, Dkt. No. 43, to which Experian filed a "Notice of Joinder," Dkt. No. 45; *see id.* at 1 (stating that "[t]he grounds for dismissal and reasoning set forth in the Motion apply equally to Plaintiff's claims against Experian"). King opposes the motion. Dkt. No. 49.

---

[3] King attaches an exhibit that appears to be a screenshot reflecting a reduction of 26 points in her Equifax score, noting that "Between Oct 1, 2025 and Oct 31, 2025, your APPLE CARD – GS BANK credit card balance increased by $2,932 from $0 to $2,932." *Id.* at 36. She also attaches a screenshot from "myEquifax" noting that the recorded balance from her APPLE CARD – GS BANK USA was $2,932, that the date of last payment was April 18, 2024, and that the date the past due amount was reported was October 31, 2025. *Id.* at 39.

Another exhibit that seems to be from Intuit Credit Karma relating to a TransUnion report depicts "derogatory" payment history for "GS BANK USA" from September 2024 to July 2025, with a last payment date of April 18, 2024. *Id.* at 40. It also indicates that a CREDENCE RESOURCE MANAGEMENT account that was opened on July 18, 2025 was placed for collection by AT&T in the amount of $2,531. *Id.* at 41.

## II. DISCUSSION

### A. Scope of the Record

King requests leave to file a surreply, claiming that Equifax's "reply raises new evidence or arguments outside the scope of the original motion." Dkt. No. 54.[4] Local Civil Rule 7(g) permits parties to "file a surreply requesting that the court strike" "material contained in or attached to a reply brief[.]" "The surreply . . . shall be strictly limited to addressing the request to strike," and "[e]xtraneous argument or a surreply filed for any other reason will not be considered." *Id.* "The surreply shall not exceed 1,050 words or, if written by hand or typewriter, three pages." *Id.*

King's proposed surreply is not "strictly limited to addressing the request to strike," and exceeds the limit of 1,050 words. *See generally* Dkt. No. 54-1; *id.* at 4 (certifying the word count as 1,356 words). Therefore, the Court will not consider King's request. However, even if the Court considered everything submitted by King, it would come to the same conclusion on the motion for judgment on the pleadings.

### B. Legal Standard

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation modified). Therefore, unlike with motions for summary judgment where the entire evidentiary record is considered, when reviewing motions for judgment on the pleadings, the Court considers only (1) the pleadings, (2) documents incorporated by reference into the complaint, and (3) matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

[4] King frivolously asserts that Equifax's arguments regarding her use of hallucinated case citations were improper. Dkt. No. 54 at 2. King is correct, however, that Equifax submitted new evidence regarding "frozen scans" of King's credit file in its reply and an attached declaration. Dkt. No. 50 at 5–6; Dkt. No. 50-1. As explained below, the Court considers only the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice in resolving the motion for judgment on the pleadings.

2003). The Court "accept[s] all factual allegations in the [relevant pleading] as true and construe[s] them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However, the court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C. The Court Grants the Motion for Judgment on the Pleadings**

As an initial matter, in resolving the motion for judgment on the pleadings, the Court considers only "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek*, 519 F.3d at 1030–31 (citation modified).[5]

---

[5] Under Federal Rule of Civil Procedure 12(d), if, "on a motion under . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12 "gives courts the discretion to accept and consider extrinsic materials offered in connection with" a Rule 12 motion. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007); *see Richfield v. Fish Food Banks of Pierce Cnty.*, No. C14-5516-BHS, 2015 WL 300484, at *2 (W.D. Wash. Jan. 22, 2015) (choosing to exclude matters outside the pleadings that were presented on a Rule 12 motion). A district court does not abuse its discretion under

King alleges that the CRAs—Equifax and Experian—violated FCRA by failing to delete inaccurate information in her credit files after receiving actual notice of the inaccuracies. Dkt. No. 4 at 15. The CRAs seek dismissal on the basis that King "fails to allege an inaccuracy" because "the documents she attaches to her Complaint as proof of the inaccuracy belie her claim entirely." Dkt. No. 43 at 5. Specifically, although King claims in her complaint that AT&T's Office of the President "acknowledged the error and offered to issue credits" for the "fraudulent" balance only "*after* the account had been sent to collections and [King]'s credit damaged," *id.* (quoting Dkt. No. 4 at 20) (emphasis added), the exhibit upon which she relies for this proposition—a letter from AT&T's Office of the President dated October 9, 2025—states that AT&T applied credits for the allegedly fraudulent charges on July 1, 2024, well before the account was sent to collections. *Id.* AT&T also "confirmed that the remaining balance was valid" in the October 2025 letter. *Id.* (quoting Dkt. No. 4 at 25). Another exhibit also evidences that the account was not sent to collections until well after AT&T credited the erroneous charges: in a "Call Transcript with AT&T," King states that the unauthorized line was added to her account "about a year ago"; that "Danny" with AT&T "said he was going to take care of this almost a year ago," and "[t]his has *now* gone to collections because it wasn't resolved." Dkt. No. 4 at 33 (emphasis added). Although the alleged transcript is undated, other exhibits and allegations show that King spoke with Danny in July 2024 and the unauthorized line was added in February 2024, *id.* at 19, 26, indicating that the date of the call during which King said the account had "now" gone to collections was in 2025. Thus—according to Equifax—"from the documents that [King] attaches to her Complaint, it appears that AT&T refunded the disputed $1,141.30 on or around July 1, 2024, but a 'remaining balance was valid,' and, it appears, this is the balance that was sent to collections 'almost a year'

---

Rule 12(d) when it does not consider matters that would require conversion of the motion. *See Barnes v. Kris Henry, Inc.*, No. 20-17141, 2022 WL 501582, at *1 (9th Cir. Feb. 18, 2022).

later." Dkt. No. 43 at 2. In other words, King's own allegations and exhibits attached to her complaint show that only a valid balance was sent to collections, so "her Complaint contains no plausible allegations of inaccuracy" regarding the debt report purportedly disputed to the CRAs. *Id.* at 6.

King responds that "[e]ven if [e]quifax were correct that a 'valid remaining balance' existed" with AT&T, "the credit report and collection activity showed the entire $2,531.22 as past due for nearly 14 months," when only "part of the debt [w]as 'valid.'" Dkt. No. 49 at 6. She further asserts that because "AT&T admitted error[,] there is no legal ambiguity," and "[t]he dispute is not over contract interpretation," but rather "whether AT&T report[ed] a debt that it had already admitted was erroneous[.]" *Id.* at 7.

To sustain either a Section 1681e or a Section 1681i claim based on inaccuracy, a consumer must first "make a 'prima facie showing of inaccurate reporting' by the CRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)); *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022) ("[T]he reasonableness of the investigation is not in play" if a plaintiff fails to first make a prima facie showing of inaccuracy.). Information is inaccurate for purposes of Sections 1681e and 1681i where it is either "'patently incorrect' or is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)).[6]

---

[6] Consistent with this meaning, other circuits and district courts within the Ninth Circuit have held that reported information is "inaccurate" under FCRA "only if that information is objectively and readily verifiable" as mistake- or error-free. *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023) (citing *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)); *see also Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th 918, 933 (10th Cir. 2026) ("We . . . follow the Fourth, Second, Fifth, and Eleventh Circuits and conclude that under the FCRA reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable by the furnisher as containing a mistake or error." (citation modified)); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 252 (4th Cir. 2025); *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 288–89 (5th Cir. 2025); *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359, 1367–68 (11th Cir. 2024); *Davis v. Trans Union, LLC*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, at *9 (C.D. Cal. July 22, 2025). As the Fourth Circuit explained,

Here, as Equifax demonstrates, the exhibits that King incorporates into her complaint undermine her allegations that the CRAs reported a debt that AT&T had previously acknowledged was erroneous. Dkt. No. 4 at 19–20, 25–6, 33. AT&T and King agree that AT&T made a billing error at one point in time, but the exhibits to the King's complaint show that AT&T did not send the resulting erroneous debt to collections; instead, it credited that amount to the account long before sending the (valid) remaining balance to collections. *See* Dkt. No. 4 at 25. Furthermore, King's argument in her response that "the credit report and collection activity showed the entire $2,531.22 as past due for nearly 14 months," when only "part of the debt [w]as 'valid,'" Dkt. No. 49 at 6, is unsupported by her complaint and the attached exhibits, which do not show that amount was past due for "nearly 14 months," and instead demonstrate that the part of the debt King claims was invalid was credited to her account in July 2024, long before her account was sent to collections, Dkt. No. 4 at 25, 41; *see also* Dkt. No. 49-4 at 1 (AT&T bill from September 2024—after the $1,141.30 credit was applied—for $2,531.22).[7] Again, the court need not accept as true

> [A] dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either. Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation. . . .
>
> On the other hand, the scope of an investigation into objectively and readily verifiable information is not limited to confirming accurate transcription of a debt's amount or the name of the debtor. *See Sessa*, 74 F.4th at 42. Whether a debt has been paid could, in some instances, be objectively and readily verifiable. So might claims that alleged debts never occurred. Also, while many legal disputes will not involve objectively and readily verifiable information, some disputes that implicate legal questions and legal doctrines will.

*Roberts*, 131 F.4th at 251–52; *see also Sykes v. Experian Info. Sols., Inc.*, 183 F.4th 904, 908 (7th Cir. 2026) ("CRAs must report facts that are ascertainable from available records (including legal documents) but have no obligation to discern the meaning of those documents. That is, the FCRA does not require CRAs to resolve legal disputes, interpret contracts or statutes, or determine the validity or enforceability of debts."); *Holden*, 98 F.4th at 1368 (holding that a dispute was "not objectively and readily verifiable because it stem[med] from a contractual dispute without a straightforward answer").

[7] While the "Payment History" on the Goldman Sachs account reflects 11 months of non-payment—September 2024 through July 2025—it does not indicate the amount of the balance in those months, and the exhibit states that the debt was reported on August 31, 2025. *Id.* at 39–40. Furthermore, September 2024 was multiple months after AT&T

"allegations that are contradicted by documents referred to in the complaint." *Manzarek*, 519 F.3d at 1031; *see also* 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1363 (3d ed. April 2026 Update) (the Court "will not accept as true pleading allegations that are contradicted by . . . exhibits attached to or incorporated in the pleading"). Here, the complaint and attached exhibits demonstrate that the CRAs did not report "a debt that [AT&T] had already admitted was erroneous," Dkt. No. 49 at 7, but rather accurately recorded the debt from the remaining balance furnished by AT&T. Thus, King has not advanced any plausible allegations of inaccuracy, and because her complaint contains no other allegations establishing any basis for claiming that the debt amount was inaccurate, the Court must grant the CRAs' motion as to King's FCRA claims.[8]

The CRAs also move for dismissal of King's state law claim because she "failed to allege an unfair or deceptive act." Dkt. No. 43 at 9. For the reasons stated above, King has failed to plead inaccurate reporting by the CRAs. She has not provided any other actionable way that the CRAs committed unfair or deceptive acts. *See* Dkt. Nos. 4, 49. Therefore, the Court grants the CRAs' motion as to King's state law claim too.

**D. Amendment of the Complaint Would be Futile**

Although courts liberally provide pro se plaintiffs leave to amend, *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990), that is not limitless. Denying leave to amend is appropriate when granting leave to amend would be futile. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

King's opposition brief relies on newly alleged facts, *see* Dkt. No. 49 at 7 ("Although not attached to the initial complaint . . ."), that still fail to state a prima facie claim for inaccuracy. In the absence of a prima facie case of inaccuracy, King cannot state a claim under Sections 1681e(b)

---

purportedly issued King credits in July 2024. *Id.* at 20.

[8] The Court agrees with Equifax that its Answer does not preclude the Rule 12(c) motion. Dkt. No. 50 at 2.

or 1681i. *Shaw*, 891 F.3d at 756; *Sustrik v. Equifax Info. Servs., LLC*, 812 F. App'x 727, 728 (9th Cir. 2020) ("FCRA's reinvestigation provision, 15 U.S.C. § 1681i, . . . require[s] that an actual inaccuracy exist for a plaintiff to state a claim." (quoting *Carvalho*, 629 F.3d at 890)). Furthermore, to the extent there are other bases to dispute the debt, amendment would be futile because King first needs to state those bases in a dispute filed with the CRAs. Dkt. No. 4 at 20 (King filed disputes with the CRAs regarding the allegedly inaccurate $1,141.30 AT&T-related collection account); 15 U.S.C. § 1681i(a)(1)(A) (FCRA provides 30 days for a CRA to conduct a reasonable reinvestigation after receiving a consumer dispute). Therefore, the Court finds that amendment would be futile and denies King leave to amend. *See Carvalho*, 629 F.3d at 893 (district court properly concluded that "there was no need to prolong the litigation by permitting further amendment" where consumer could not "make a prima facie case of inaccurate reporting).

## III. ORDER TO SHOW CAUSE

The Court has serious concerns about King's repeated failure to abide by applicable rules. Her surreply was improper, as discussed above, despite the Court striking her first improper surreply. Dkt. No. 52. She also filed a premature motion to compel without engaging in a good faith attempt to resolve the dispute without court involvement. Dkt. No. 72. And her opposition brief to Equifax's motion contains citations to nonexistent cases.

After Equifax pointed out the hallucinated cases, Dkt. No. 50 at 7, King filed a Praecipe to Correct Citations in which she purported to replace *Durnford v. MusclePharm Corp.*, No. 2:15-cv-00851, 2015 WL 5444800, at *3 (D. Nev. Sept. 15, 2015), which does not exist, with *Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018); and *Boyer v. TransUnion, LLC*, No. 3:21-cv-00918, 2023 WL 5699150, at *1 (D. Conn. Jan. 2, 2023), which does not exist, with *Boyer v.*

*TransUnion, LLC*, No. 3:21-cv-00918, 2023 WL 1434005 (D. Conn. Feb. 1, 2023). Dkt. No. 53.[9] King does not provide page numbers for either "corrected citation" in violation of Local Civil Rule 10. LCR 10(e)(6) ("[C]itations to legal authority must include page numbers."). Furthermore, neither of the "corrected citations" stand for the propositions that King represented the non-existent cases to stand for in her opposition. Dkt. No. 49 at 4, 7. While King attempts to explain the discrepancies as "typographical mistakes, not fabrications," Dkt. No. 54-1 at 3–4, these errors are hallmarks of nonexistent cases created through artificial intelligence. Specifically, "[a]s the instant case demonstrates, AI will insert case names and citations for cases that do not exist, or with a wrong court designation, or most critically, AI will invent or fabricate language as quoted content that is not present in the cited case or that has nothing to do with the subject matter of it." *United States v. Simmons*, No. 4:25-CR-9-FL-1, 2026 WL 674372, at *3 (E.D.N.C. Mar. 10, 2026); *see also Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 969 (7th Cir. 2026) (noting these are "the hallmarks of a so-called AI 'hallucination,' a circumstance where an AI large language model generates an output that is fictional, inaccurate, or nonsensical").

Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

---

[9] King also provides a nonexistent cite for *Gross v. CitiMortgage*. Dkt. No. 49 at 7 (citing to "No. 20-35270, 2022 WR 1552285," which does not exist, even when replacing "WR" with "WL").

Inclusion of nonexistent authority in a brief "is plainly a violation of a signer's certification under Rule 11 that 'to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Lewis v. Eagle Cnty. Gov't*, No. 25-CV-02269-NYW-NRN, 2025 WL 3639608, at *6 (D. Colo. Nov. 14, 2025) (quoting Fed. R. Civ. P. 11(b)(2)). "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). Indeed, citation to nonexistent legal authority "is fundamentally frivolous[.]" *Lewis*, 2025 WL 3639608, at *6.

Pro se plaintiffs do not have greater rights than plaintiffs represented by counsel, *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.5 (9th Cir. 1986), and they "are subject to the same procedural requirements as other litigants," *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022). The Court accordingly "expects all parties—pro se and those represented by counsel—to comply with the Court's procedural rules." *Capello v. Sziebert*, No. C13-5275BHS-JRC, 2014 WL 2465283, at *1 (W.D. Wash. June 2, 2014). King's repeated violations of applicable rules waste scarce judicial resources. Furthermore, the deficiencies in her submissions to the Court indicate that instead of advancing only those claims that are merited based on her personal "knowledge, information, and belief" after "an inquiry reasonable under the circumstances," King intends to rely on artificial intelligence to litigate her case for her. Furthermore, the Court has concerns that King's complaint was the product of artificial intelligence and therefore may contain allegations that were wholly made up by generative AI.

The Court previously warned the King that it "will impose sanctions up to and including dismissal of her suit" if she continued to violate applicable rules, Dkt. No. 42 at 5, but she has not

heeded that warning. For the reasons stated above, the Court is considering dismissing King's entire case with prejudice. If the Court does not dismiss her case, it is considering imposing the following alternative sanctions:

1. Ordering King to pay the attorney's fees Equifax incurred in responding to her hallucinated citations. Dkt. No. 50 at 7–8.

2. Requiring King to include in all future correspondence with opposing counsel (including discovery responses) and in all future filings with the Court a statement, made under penalty of perjury, addressing whether generative AI was used, disclosing the name of the tool used, and certifying that she has personally reviewed the correspondence or filing and that all citations and quotations therein refer to existing authority, and any factual assertions therein are supported by adequate foundation (e.g., personal knowledge or evidentiary support). *See Malkeet Lnu v. Blanche*, 177 F.4th 1014, 1032 (9th Cir. 2026).

King is ORDERED to show cause by no later than September 29, 2026, why the Court should not impose the above sanctions. In her response to the order to show cause, which must not exceed 3,500 words, King must:

1. address the Court's concerns above; and

2. address whether generative AI was used in drafting her complaint, and if so, (1) what steps (if any) she took to review and verify the content of the complaint before she filed it; and (2) whether any allegations against the remaining Defendants are not accurate or supportable.

## IV. CONCLUSION

For the foregoing reasons, Equifax's and Experian's Motion for Judgment on the Pleadings is GRANTED. Dkt. Nos. 43, 45. King's claims against Equifax and Experian are DISMISSED.

The Court STAYS this case until it decides whether to dismiss the remainder of King's claims pursuant to its Order to Show Cause. This stay is necessary while the Court considers King's response to its show-cause order. Any hardship resulting to King from the stay is the product of her own violations of applicable law. Furthermore, Defendants should not be required to expend their resources attempting to comply with rules and deadlines until the Court receives assurances that Plaintiff is willing to do the same. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Dated this 9th day of September, 2026.

Lauren King
United States District Judge